J-S17015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE MATTER OF THE ADOPTION OF: : IN THE SUPERIOR COURT OF
L.L.E.G. : PENNSYLVANIA
:
:
APPEAL OF: L.G., NATURAL FATHER : No. 1457 WDA 2015

Appeal from the Decree August 24, 2015
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 27A In Adoption, 2015

BEFORE: GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED MARCH 29, 2016**

Appellant, L.G. ("Father"), appeals from the decree entered in the Erie County Court of Common Pleas, which involuntarily terminated his parental rights to his minor child, L.L.E.G. ("Child"). Upon a thorough review of the record, we affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows. Child was born in January 2010, to Father and L.T. ("Mother"). On January 11, 2013, Erie County Office of Children and Youth ("OCY") filed an emergency petition for custody of Child and his younger half-brother. Child and his half-brother were living with Mother at the time, and Father was incarcerated at SCI—Albion. The court subsequently granted the petition, and OCY placed Child and his half-brother in foster care. On January 15, 2013, OCY filed a petition to adjudicate Child and his half-brother dependent. In the dependency petition, OCY raised concerns about Mother's

_____

*Former Justice specially assigned to the Superior Court.

and Father's failure to provide Child and his half-brother with proper parental care or control. On January 25, 2013, the court granted OCY's dependency petition and adjudicated Child and his half-brother dependent.

The court held a dispositional hearing on February 20, 2013, which Father did not attend due to his incarcerated status. After the dispositional hearing, by order dated February 26, 2013, the court ordered Mother to comply with the requirements of a permanency plan and listed the goal as reunification. The court held its first permanency review hearing on July 15, 2013. Father attended the first permanency review hearing and made contact with OCY caseworker, Lisa Langer ("Ms. Langer"). Following the hearing, by order dated July 19, 2013, the court ordered Father to comply with the requirements of a permanency plan similar to the one imposed on Mother. The goal remained reunification at that time.

The court held a second permanency review hearing on January 22, 2014, which Father attended. By order dated January 29, 2014, the court determined there was no compliance or progress by Father with respect to his permanency plan. Specifically, the court noted that Father had failed to contact OCY to set up a treatment plan. The goal remained reunification at that time. The court held a third permanency review hearing on July 9, 2014, which Father did not attend because he was in a halfway house. Following the hearing, by order dated July 17, 2014, the court held there was no compliance or progress by Father with respect to his permanency

plan. In the July 17, 2014 order, the court stated Father was to contact OCY if Father desired a treatment plan to help achieve completion of his permanency plan. The goal at the time remained reunification.

The court held a fourth permanency review hearing on September 15, 2014, which Father did not attend because he was in a halfway house. Following the hearing, by order dated September 18, 2014, the court held there was still no compliance or progress by Father with respect to his permanency plan. Because of both Father's and Mother's continued minimal or non-compliance, the court changed the goal to reunification concurrent with adoption. The court held a fifth permanency review hearing on November 12, 2014, which Father did not attend because he was in prison for a parole violation. Following the hearing, by order dated November 20, 2014, the court determined there was no compliance or progress by Father with respect to his permanency plan. The goal remained unchanged.

In December 2014, Father contacted OCY caseworker Ms. Langer, who referred Father for treatment services. Father, however, failed to engage in the offered treatment services including urinalysis. Specifically, with respect to the urinalysis program, Father was discharged from the program after he failed to report for a single urine screening between December 2014 and January 2015. The court held a sixth permanency review hearing on February 9, 2015, which Father attended. Following the hearing, by order dated, February 19, 2015, the court determined Father had made minimal

J-S17015-16

progress toward completion of his permanency plan. Because of Father's and Mother's continued minimal or non-compliance with the court-imposed permanency plans, the court changed the goal to adoption.

OCY subsequently filed a petition for involuntary termination of Mother's and Father's parental rights on April 15, 2015. After a hearing, the court terminated both Mother's and Father's parental rights on August 20, 2015. On September 21, 2015, Father's counsel timely filed a notice of appeal and statement of intent to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). Father's counsel filed a petition for leave to withdraw in this Court on November 30, 2015.

As a preliminary matter, appellate counsel seeks to withdraw representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** principles apply to appeals involving termination of parental rights. **See In re S.M.B.**, 856 A.2d 1235 (Pa.Super. 2004). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of the right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79,

- 4 -

978 A.2d at 358-61; *In re Adoption of V.G.*, 751 A.2d 1174, 1176 (Pa.Super. 2000). Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa.Super. 2007).

In *Santiago, supra*, our Supreme Court addressed the briefing requirements where court-appointed counsel seeks to withdraw representation on appeal:

> Neither *Anders* nor *McClendon*[1] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under *Anders* are references to anything in the record that might arguably support the appeal.
>
> * * *
>
> Under *Anders,* the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

*Santiago, supra* at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

---

[1] *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981).

Instantly, Father's counsel filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Father with a copy of the brief and a letter explaining Father's rights to retain new counsel or to proceed *pro se* to raise any additional issues Father deems worthy of this Court's attention. (**See** Letter to Father, dated 11/25/15, attached to Petition for Leave to Withdraw as Counsel). In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Father's issues. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Counsel raises the following issues on Father's behalf:

> DID THE ORPHANS['] COURT COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW WHEN IT CONCLUDED THAT [OCY] ESTABLISHED SUFFICIENT GROUNDS FOR TERMINATION UNDER 23 PA.C.S.A. § 2511(A)(1)?
>
> DID THE ORPHANS' COURT COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW WHEN IT CONCLUDED THAT [OCY] ESTABLISHED SUFFICIENT GROUND FOR TERMINATION UNDER 23 PA.C.S.A. § 2511(A)(2)?
>
> DID THE ORPHANS' COURT COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW WHEN IT CONCLUDED THAT TERMINATION OF [FATHER'S] PARENTAL RIGHTS WAS IN [] CHILD'S BEST INTERESTS UNDER 23 PA.C.S.A. § 2511(B)?

(**Anders** Brief at 5).

For purposes of disposition, we combine Father's issues on appeal. Father argues OCY cannot establish grounds for termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1) because the facts do not reveal Father's refusal or failure to perform parental duties or Father's settled purpose of relinquishing claim to Child. Father also avers OCY cannot establish grounds for termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) because the facts do not reveal that Father's repeated and continued incapacity has caused Child to be without essential parental care or that Father cannot or will not remedy those incapacities. Father further asserts OCY cannot establish grounds for termination of Father's parental rights under 23 Pa.C.S.A. § 2511(b) because the facts do not show that termination of Father's parental rights is in Child's best interest. Father concludes there are insufficient grounds for termination under 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), and (b), and this Court should reverse the termination of his parental rights. We disagree.

The standard and scope of review applicable in a termination of parental rights case is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the

- 7 -

record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

*See also In re Adoption of C.L.G.*, 956 A.2d 999, 1003-04 (Pa.Super. 2008) (*en banc*).

OCY sought the involuntary termination of Father's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his…conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa.

718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond,

paying close attention to the effect on the child of permanently severing the bond." *Id.* at 520. Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and…have his parental rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and

- 12 -

maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the trial court made the following factual findings at Father's termination hearing: (1) Child was removed from Mother's home in January of 2013 for various reasons including lack of supervision, lack of parenting, unstable mental health situation, and unstable housing and sleeping arrangements; (2) at the time Child was removed, Father was incarcerated and had a criminal history; (3) Father has not ever been involved with the parenting of Child; (4) at the first permanency review hearing in July 2013, the court ordered Father to comply with a permanency plan and listed the goal as reunification; (5) the court found no compliance or progress by Father with respect to his permanency plan at the January 2014, July 2014,

- 13 -

and September 2014 hearings, and Father did not attend the July 2014 and September 2014 hearings because he was in a halfway house; (6) because Father was not at the fourth permanency review hearing in September 2014, Father was not present when the court changed the goal to reunification concurrent with adoption; (7) Father was incarcerated for a parole violation when the fifth permanency review hearing occurred in November 2014, where the court once again found no compliance or progress by Father with respect to his permanency plan; (8) in December 2014, Father contacted OCY, and a treatment plan was set up for Father to help him towards completion of his permanency plan; (9) OCY set up participation in a urinalysis program as part of Father's treatment plan, but in January 2015, Father was discharged from the program after fifteen no-show positives; (10) Father also failed to follow-up with OCY with respect to his treatment plan and OCY did not hear from Father again; (11) at the sixth permanency review hearing in February 2015, the court change the goal to adoption due to Father and Mother's lack of compliance and progress with their permanency plans; (12) Child is now thriving in pre-adoptive home; (13) Child does not inquire about Father and refers to pre-adoptive parents as "mom" and "dad"; (14) pre-adoptive parents are fulfilling Child's needs and no detriment would occur if Father's parental rights are terminated; (15) Child shows affection to pre-adoptive family and adoption is in the best interest of Child because it would provide the permanency and stability that

Child needs. Based on these factual findings, the court concluded that sufficient grounds existed for termination of Father's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), and (b). The record supports the court's findings and conclusions, and we see no reason to disturb them. *See In re Adoption of K.J., supra*. Accordingly, we affirm the involuntary termination of Father's parental rights and grant counsel's petition to withdraw.

Decree affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2016